```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF GEORGIA
                   COLUMBUS DIVISION
```

DOROTHEA L. JOYNER,                *

    Plaintiff,                 *

vs.                                *

NATIONWIDE HOTEL MANAGEMENT        *   CASE NO. 4:20-cv-42 (CDL)
COMPANY, LLC f/k/a WOODSPRING
HOTELS PROPERTY MANAGEMENT, LLC,   *

    Defendant.                 *

## O R D E R

Dorothea Joyner alleges that her former employer, Nationwide Hotel Management Company, LLC, subjected her to intentional infliction of emotional distress because two management-level employees, including Joyner's direct supervisor, spread a false rumor throughout the workplace and corporate office that Joyner was not qualified for her job and had been promoted only because she had a sexual affair with her former boss. The Court previously concluded that Joyner's complaint contained sufficient factual allegations, taken as true, to avoid summary dismissal. *Joyner v. Nationwide Hotel Mgmt. Co.*, No. 4:20-CV-42 (CDL), 2020 WL 5046869, at *3-*4 (M.D. Ga. Aug. 26, 2020). The Court dismissed all of Joyner's other claims. *See generally id.* Nationwide now seeks summary judgment on the intentional infliction of emotional distress

claim, arguing that Joyner cannot prove the essential elements of her claim. Joyner, on the other hand, asks the Court to strike Nationwide's defenses from its answer. As discussed below, Joyner's motion to strike (ECF No. 22) is denied, and Nationwide's summary judgment motion (ECF No. 31) is granted.

**I.   Joyner's Motion to Strike (ECF No. 22)**

The Court may strike an "insufficient defense" from a pleading. Fed. R. Civ. P. 12(f). Nationwide's answer contains sixteen "separate defenses." Answer 11-13, ECF No. 20. Joyner wants the Court to strike them all. Her main contention is that Nationwide did not allege enough facts to support the defenses. But most of these defenses are fairly read as denials of Joyner's allegations, and all of them give Joyner notice of the nature of the defenses and the issues Nationwide intends to raise. The Court thus finds that Joyner's arguments raised in her motion to strike lack merit. In particular, her request to strike the fifteenth defense—the defense most pertinent to the present motion for summary judgment—is denied. That defense is essentially a denial of Joyner's allegations regarding intentional infliction of emotional distress. This defense puts Joyner on notice that Nationwide intends to argue that she cannot meet her burden of proving the elements of the claim, including the element of severe emotional distress. The Court finds no basis to strike it.

**II.   Nationwide's Motion for Summary Judgment (ECF No. 31)**

Nationwide seeks summary judgment on Joyner's lone remaining claim: her claim for intentional infliction of emotional distress.  Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

A.   Factual Background

Viewed in the light most favorable to Joyner, the present record reveals the following facts.  Nationwide operates two hotels in Columbus, Georgia.  The hotels are next to each other and are referred to by the parties as Building 1 and Building 2.  Joyner began working in Building 2 as a guest services representative.  Her direct supervisor was Nelwyn Smith, and her second level supervisor was Bill Mark.  After working at the

3

hotel for approximately seven months, Joyner was offered a promotion to be general manager of Building 2, and Smith was to be transferred to Building 1. Joyner asserts that after her promotion was announced but before she began her new role, Smith began to resent her. After Joyner began her new role, she reported directly to Mark. Several months later, Mark was assigned to a new region and Robyn Evans became Joyner's supervisor.

Shortly after Joyner's promotion was announced, an employee told Joyner there was a rumor circulating about her: Smith said that Joyner had received the promotion to general manager because she slept with Mark. Joyner overheard Smith tell Evans the same rumor, and she heard from other employees on several occasions that Smith was saying that she got the promotion because she slept with Mark. This rumor was false; Joyner did not have an affair with Mark.

Around the same time Joyner overheard Smith tell Evans the rumor, Evans told Joyner that she needed to improve her work and placed Joyner on a performance improvement plan. Joyner believes that she was only placed on the performance improvement plan because of Smith's rumor. Joyner began to experience stress because of Smith's rumor and Evans's performance improvement plan. Joyner did not seek any medical treatment for her emotional distress, and she did not see a psychologist,

4

psychiatrist, or counselor. Joyner Dep. 190:24-191:7, ECF No. 33. One of Joyner's children stated that Joyner would "cry almost daily." J. Edley Aff. ¶ 13, ECF No. 35-6. Joyner asserts that she felt "pressure [to] outperform" and do her best so she could "show" her employer that she was qualified for her job. Joyner Dep. 165:4-9, 188:9-16. Joyner was determined not to go down because of the rumor, and she wanted to stay strong for her family. Joyner contends that she performed at a high level, was a model employee, and even outperformed Smith. Joyner also did well in her online university classes that she took while working at the hotel. *Id.* at 13:5-7, 14:16-21. Joyner claims that notwithstanding her efforts, Evans terminated her employment. Soon after Joyner's employment with Nationwide ended, she began an enjoyable, rewarding, paid job at an organization for which she had been volunteering, and she continued her university education. *E.g.*, Pl.'s Resp. to Def.'s Mot. for Summ. J. 10-11, ECF No. 35.

B. Discussion

To establish a claim for intentional infliction of emotional distress, Joyner must prove (1) intentional or reckless conduct (2) that is extreme and outrageous and (3) causes emotional distress (4) that is severe. *Plantation at Bay Creek Homeowners Ass'n, Inc. v. Glasier*, 825 S.E.2d 542, 550 (Ga. Ct. App. 2019). She must prove all four elements. Without

5

severe emotional distress, Joyner's claim for intentional infliction of emotional distress fails, even if Joyner did present enough evidence to establish intentional or reckless outrageous conduct that caused some distress and a sufficient basis for holding Nationwide liable for the acts of its employees. *See id.* (stating that all four elements—including severe emotional distress—must be present to support a claim of intentional infliction of emotional distress).

"Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Id.* at 551 (quoting *Abdul-Malik v. AirTran Airways, Inc.*, 678 S.E.2d 555, 560 (Ga. Ct. App. 2009)). Liability only arises where emotional distress is "extreme." *Id.* (quoting *Abdul-Malik*, 678 S.E.2d at 560). "The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Id.* (quoting *Abdul-Malik*, 678 S.E.2d at 560). In *Plantation at Bay Creek*, for example, the Georgia Court of Appeals found that the plaintiff had not established severe emotional distress. *Id.* at 551. There, the plaintiff "suffered headaches for approximately a week" and mentioned "them to her doctor during her annual physical," and she experienced "fears for her safety and that of her children" after her homeowners association encouraged its members to cross

6

her property to access a lake. *Id.* The Georgia Court of Appeals found that these feelings, "while certainly unpleasant, [did] not constitute emotional distress 'so severe that no reasonable person could be expected to endure it.'" *Id.* (quoting *Abdul-Malik*, 678 S.E.2d at 560). Likewise, in *Abdul-Malik*, the Georgia Court of Appeals found that the plaintiff had not established severe distress; although he had trouble sleeping and gained weight, there was no evidence that he took medication or sought professional help. *Abdul-Malik*, 678 S.E.2d at 560. "While unpleasant, the sleeplessness and weight gain are not so severe that no reasonable person could be expected to endure them." *Id.*

Joyner contends that she suffered stress and anxiety and cried often because of Smith and Evans's conduct. She does not assert that she had any other symptoms. She admits that she never sought any medical treatment or counseling for her emotional distress. She emphasizes that she tried to rise above the rumor and show Nationwide that she was qualified for her job by performing at a high level and being a model employee. And Joyner insists that she did a great job despite the stress—that she chose "fighting back over seeking emotional distress intervention." Pl.'s Resp. to Def.'s Mot. for Summ. J. 10. Based on this record, the Court cannot find that Joyner suffered

emotional distress so severe that no reasonable person could be expected to endure it.

Joyner compares her emotional distress to the distress suffered by the plaintiffs in *Lightning v. Roadway Express, Inc.*, *Anderson v. Chatham,* and *Coleman v. Housing Authority of Americus*. But those cases are easily distinguishable. In *Lightning*, there was evidence that the employer's outrageous conduct caused the plaintiff to suffer "a psychotic episode which included manifestations of paranoid delusions" and resulted in the plaintiff being hospitalized in a mental health facility. 60 F.3d 1551, 1555, 1558 (11th Cir. 1995). In *Anderson*, there was evidence that the plaintiff's boss's two-year pattern of abusive behavior and threats caused a flare-up of the plaintiff's ulcer and "significant physical manifestations." 379 S.E.2d 793, 800 (Ga. Ct. App. 1989). And in *Coleman*, the plaintiff presented evidence that her supervisor's constant sexual harassment caused physical manifestations like headaches and chest pains and mental symptoms like despondency and depression. 381 S.E.2d 303, 305 (Ga. Ct. App. 1989). The plaintiff sought medical treatment for these symptoms and was hospitalized for pain and recurring headaches that her doctor attributed at least in part to job-related stress. *Id.* at 306. In contrast, here, Joyner did not present any evidence of any serious prolonged physical

8

manifestations of her stress aside from alleged crying, and she did not present any evidence that her stress was so severe that it required medical or psychological treatment. Joyner also relies on *Nicholson v. Windham*, where the plaintiff's intentional infliction of emotional distress claim survived a motion to dismiss because the plaintiff adequately alleged severe emotional distress under Georgia's liberal pleading standard. 571 S.E.2d 466, 470 (Ga. Ct. App. 2002). This case, though, is past the pleading stage, and Joyner was obligated to point to *evidence* of severe emotional distress. She did not. Without evidence that Joyner suffered severe emotional distress, her claim for intentional infliction of emotional distress fails. Since Joyner's intentional infliction of emotional distress claim fails because she did not prove severe emotional distress, Nationwide is entitled to summary judgment, and the Court need not evaluate the other elements of this claim.

## CONCLUSION

For the reasons set forth above, Joyner's motion to strike (ECF No. 22) is denied and Nationwide's summary judgment motion (ECF No. 31) is granted.

IT IS SO ORDERED, this 8th day of March, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA